**UNITED STATES BANKRUPTCY COURT
DISTRICT OF SOUTH CAROLINA (COLUMBIA)**

IN RE:

**ORLANDO MAURICE PATTERSON, and
TONIKKA MOZONE PATTERSON,**

**CASE NO.:  14-03185-JW**
**CHAPTER**:  13

      **Debtors.**

_____/

**MOTION FOR ORDER CONFIRMING NO AUTOMATIC STAY**

     Christiana Trust, A Division of Wilmington Savings Fund Society, FSB, as Trustee for Normandy Mortgage Loan Trust, Series 2013-9 ("Christina Trust"), by and through its undersigned attorney, and pursuant to local rule 4001-1, and 11 U.S.C. §§ 362(h), 362(j), and 521(a)(6), hereby moves for an order confirming the automatic stay is not in effect, and in support states as follows:

1. On May 30, 2014, the above Debtors filed a voluntary petition for relief pursuant to Chapter 13 of the United States Bankruptcy Code.

2. Jurisdiction in this cause is granted to the Bankruptcy Court pursuant to 28 USC §1334 and 11 USC §362, and all other applicable rules and statutes affecting the jurisdiction of the Bankruptcy Court generally.

3. Christina Trust holds an interest in the subject property located at 131 Odom Street, Aiken, South Carolina, (hereinafter "Property"), by virtue of a certain note, mortgage and assignments of mortgage.  True and correct copies of the note, mortgage and assignments of mortgage are attached hereto and incorporated herein as exhibits.

4. The Property was neither listed in the Debtors' schedules, nor in the proposed chapter 13 plan, and as such, the stay was never imposed onto the Property.

5. An Order confirming the Chapter 13 plan was entered on July 31, 2014 [DE#12].

6. On June 6, 2016, the Debtors filed a Motion to Incur Debt, [DE#23], with respect to the Property.

7.  The Debtors Motion to Incur Debt was Granted. [DE#24]

8.  The Debtors have not filed a motion to impose the stay on the Property, nor has the stay been requested to be imposed by the Debtors in any other paper or filing to date.

9.  The mortgage on the Property is in default, and Christina Trust is therefore seeking to exercise its available state law remedies.

10. Pursuant to local rule 4001-1, a motion for an order confirming termination of the automatic stay may be considered on an ex parte basis.

WHEREFORE, Christina Trust prays that the Court enter an order confirming the automatic stay is not in effect, permitting Christina Trust to exercise any and all rights and available state law remedies it may have, and any such further relief as this Honorable Court deems just and appropriate.

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was provided via electronic and/or Regular U.S. Mail to the parties listed on the attached service list, this 11th day of August, 2016.

The Geheren Firm, P.C.
400 N. Tampa Street
Suite 1050
Tampa, FL 33602
Telephone:   (813) 605-3664
Facsimile:    (678) 587-9098
jtarokh@geherenlaw.com


/s/ Jason M. Tarokh, Esq.
Jason M. Tarokh, Esq.
S. Carolina Bar # 72837
Federal Court ID # 3399

## SERVICE LIST

Orlando Maurice Patterson
Tonikka Mozone Patterson
131 Odom Street
Aiken, SC 29803

Joseph E. Mitchell, III
Joseph E. Mitchell, III, PC
P.O. Box 2504
Augusta, GA 30903

William K. Stephenson, Jr.
P.O. Box 8477
Columbia, SC 29202

US Trustee's Office
Strom Thurmond Federal Building
1835 Assembly Street, Suite 953
Columbia, SC 29201

**NOTE**

MAY 27 ， 19 99                AIKEN                                           SC

[City]                                                                    [State]

131 ODOM STREET
AIKEN, SC 29803

[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 66,375.00   (this amount is called "principal"), plus interest, to the order of the Lender. The Lender is

**THE MONEY CENTRE, INC.,**

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder".

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of principal has been paid. I will pay interest at a yearly rate of      **14.250 %.**

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will pay principal and interest by making payments every month.

I will make my monthly payments on the **3RD**      day of each month beginning on **JULY 3**      ， 19 99   . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. My monthly payments will be applied to interest before principal. If, on **JUNE 3** ， 2029   , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "maturity date".

I will make my monthly payments at
**PO BOX 470375   CHARLOTTE, NC  28247-0375**

or at a different place if required by the Note Holder.

### (B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $      **799.62** .

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of principal at any time before they are due. A payment of principal only is known as a "prepayment". When I make a prepayment, I will tell the Note Holder in writing that I am doing so.

I may make a full prepayment or partial prepayments without paying any prepayment charge. The Note Holder will use all of my prepayments to reduce the amount of principal that I owe under this Note. If I make a partial prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the principal I owe under this Note or by making a direct payment to me. If a refund reduces principal, the reduction will be treated as a partial prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of      **10**      calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be   **5.000 %** of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is delivered or mailed to me.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9. WAIVERS

I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 10. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_Roosevelt Patterson_ _____ (Seal)         _____ (Seal)
ROOSEVELT PATTERSON                    -Borrower                                              -Borrower

Social Security Number _____          Social Security Number _____


_____ (Seal)         _____ (Seal)
                                       -Borrower                                              -Borrower

Social Security Number _____          Social Security Number _____

[Sign Original Only]

MULTISTATE FIXED RATE NOTE - Single Family - FNMA/FHLMC UNIFORM INSTRUMENT          Form 3200 12/83
                    Page 2 of 2          Initials: _____                                      9/91

# The Money Centre, Inc.

P.O. Box 470375
Charlotte, NC 28247-0375
Phone: 704-544-9523
Fax:   704-544-9589

ADDENDUM TO PROMISSORY NOTE DATED __MAY 27, 1999__ IN THE

AMOUNT OF __$66,375.00__, BETWEEN __ROOSEVELT PATTERSON__

_____ AND THE MONEY CENTRE, INC.

PAYABLE WITHOUT RECOURSE TO _____

ON _____.



KAREN GOODALL
ASST VICE PRESIDENT

N
O
T
R

Mortgagee:      ROOSEVELT PATTERSON
Address:        131 ODEM STREET
                AIKEN, SC 29803

## ALLONGE TO NOTE

PAY TO THE ORDER OF:

WITHOUT RECOURSE

KAYE CARTER,  ASSISTANT SECRETARY

ACCREDITED HOME LENDERS, INC.,
A CALIFORNIA CORPORATION

MORTGAGE
VOL 2272 PAGE 92



WHEN RECORDED MAIL TO
THE MONEY CENTRE, INC.
PO BOX 470375
CHAROTTE, NC 28247-0375

——————————————— [Space Above This Line For Recording Data] ———————————————

# MORTGAGE

THIS MORTGAGE ("Security Instrument") is given on    **MAY 27, 1999**        . The mortgagor
is  **ROOSEVELT PATTERSON**

whose address is     **131 ODOM STREET**
**AIKEN, SC  29803**                                                      ("Borrower").
This Security Instrument is given to    **THE MONEY CENTRE, INC.**
                                                                                                    ,
which is organized and existing under the laws of   **THE STATE OF NORTH CAROLINA**      , and whose
address is    **10504 PARK ROAD**
**CHARLOTTE, NC  28210**                                                  ("Lender").
Borrower owes Lender the principal sum of
**SIXTY-SIX THOUSAND THREE HUNDRED SEVENTY-FIVE AND 00/100**
Dollars (U.S. $      **66,375.00**       ). This debt is evidenced by Borrower's note dated the same date as
this Security Instrument ("Note"), which provides for monthly payments, with the full debt, if not paid
earlier, due and payable on    **JUNE 3, 2029**            . This Security Instrument secures to
Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and
modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to
protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and
agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby
mortgage, grant and convey to the Lender and Lender's successors and assigns the following described
property located in   **AIKEN**                                        County, South Carolina:
**\*\*\* SEE ATTACHED LEGAL DESCRIPTION \*\*\***

## MTG1

**MORTGAGE**

VOL 222 PAGE 217

which has the address of     **131 ODOM STREET**                                    **AIKEN**
                                              [Street]                                                    [City]
South Carolina     **29803**                    ("Property Address");
                          [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property".

BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal and Interest; Prepayment and Late Charges.** Borrower shall promptly pay when due the principal of and interest on the debt evidenced by the Note and any prepayment and late charges due under the Note.

**2. Funds for Taxes and Insurance.** Subject to applicable law or to a written waiver by Lender, Borrower shall pay to Lender on the day monthly payments are due under the Note, until the Note is paid in full, a sum ("Funds") for: (a) yearly taxes and assessments which may attain priority over this Security Instrument as a lien on the Property; (b) yearly leasehold payments or ground rents on the Property, if any; (c) yearly hazard or property insurance premiums; (d) yearly flood insurance premiums, if any; (e) yearly mortgage insurance premiums, if any; and (f) any sums payable by Borrower to Lender, in accordance with the provisions of paragraph 8, in lieu of the payment of mortgage insurance premiums. These items are called "Escrow Items". Lender may, at any time, collect and hold Funds in an amount not to exceed the maximum amount a lender for a federally related mortgage loan may require for Borrower's escrow account under the federal Real Estate Settlement Procedures Act of 1974 as amended from time to time, 12 U.S.C. § 2601 et seq. ("RESPA"), unless another law that applies to the Funds sets a lesser amount. If so, Lender may, at any time, collect and hold Funds in an amount not to exceed the lesser amount. Lender may estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is such an institution) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items. Lender may not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. However, Lender may require Borrower to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with this loan, unless applicable law provides otherwise. Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender may agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds, showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for all sums secured by this Security Instrument.

If the Funds held by Lender exceed the amounts permitted to be held by applicable law, Lender shall account to Borrower for the excess Funds in accordance with the requirements of applicable law. If the amount of the Funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may so notify Borrower in writing, and, in such case Borrower shall pay to Lender the amount necessary to make up the deficiency. Borrower shall make up the deficiency in no more than twelve monthly payments, at Lender's sole discretion.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender. If, under paragraph 21, Lender shall acquire or sell the Property, Lender, prior to the acquisition or sale of the Property, shall apply any Funds held by Lender at the time of acquisition or sale as a credit against the sums secured by this Security Instrument.

**3. Application of Payments.** Unless applicable law provides otherwise, all payments received by Lender

**SOUTH CAROLINA** - Single Family - Fannie Mae/Freddie Mac Uniform Instrument
Form **3041** 9/90
Laser Forms Inc. (800) 446-3555
LIFT #FNMA3041 6/96                    **Page 2 of 7**              Initials: RrB

under paragraphs 1 and 2 shall be applied: first, to any prepayment charges due under the Note; second, to amounts payable under paragraph 2; third, to interest due; fourth, to principal due; and last, to any late charges due under the Note.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines and impositions attributable to the Property which may attain priority over this Security Instrument, and leasehold payments or ground rents, if any. Borrower shall pay these obligations in the manner provided in paragraph 2, or if not paid in that manner, Borrower shall pay them on time directly to the person owed payment. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. If Borrower makes these payments directly, Borrower shall promptly furnish to Lender receipts evidencing the payments.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

**5. Hazard or Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage" and any other hazards, including floods or flooding, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's approval which shall not be unreasonably withheld. If Borrower fails to maintain coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property in accordance with paragraph 7.

All insurance policies and renewals shall be acceptable to Lender and shall include a standard mortgage clause. Lender shall have the right to hold the policies and renewals. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

Unless Lender and Borrower otherwise agree in writing, insurance proceeds shall be applied to restoration or repair of the Property damaged, if the restoration or repair is economically feasible and Lender's security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. If Borrower abandons the Property, or does not answer within 30 days a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may collect the insurance proceeds. Lender may use the proceeds to repair or restore the Property or to pay sums secured by this Security Instrument, whether or not then due. The 30-day period will begin when the notice is given.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of the payments. If under paragraph 21 the Property is acquired by Lender, Borrower's right to any insurance policies and proceeds resulting from damage to the Property prior to the acquisition shall pass to Lender to the extent of the sums secured by this Security Instrument immediately prior to the acquisition.

**6. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate, or commit waste on the Property. Borrower shall be in default if any forfeiture action or proceeding, whether civil or criminal, is begun that in Lender's good faith judgment could result in forfeiture of the Property or otherwise materially impair the lien created by this Security Instrument or Lender's security interest. Borrower may cure such a default and reinstate, as provided in paragraph 18, by causing the action or proceeding to be dismissed with a ruling that, in Lender's good faith determination, precludes forfeiture of the Borrower's interest in the Property or other material impairment of the lien created by this Security Instrument or Lender's security interest. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by

**SOUTH CAROLINA** - Single Family - Fannie Mae/Freddie Mac Uniform Instrument
Form 3041 9/90
Laser Forms Inc. (800) 446-3555
LIFT #FNMA3041 6/96                **Page 3 of 7**          Initials: *RYA*

MORTGAGE

VOL *2223* PAGE *16*

the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**7. Protection of Lender's Rights in the Property.** If Borrower fails to perform the covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture or to enforce laws or regulations), then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property. Lender's actions may include paying any sums secured by a lien which has priority over this Security Instrument, appearing in court, paying reasonable attorneys' fees and entering on the Property to make repairs. Although Lender may take action under this paragraph 7, Lender does not have to do so.

Any amounts disbursed by Lender under this paragraph 7 shall become additional debt of Borrower secured by this Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

**8. Mortgage Insurance.** If Lender required mortgage insurance as a condition of making the loan secured by this Security Instrument, Borrower shall pay the premiums required to maintain the mortgage insurance in effect. If, for any reason, the mortgage insurance coverage required by Lender lapses or ceases to be in effect, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the mortgage insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the mortgage insurance previously in effect, from an alternate mortgage insurer approved by Lender. If substantially equivalent mortgage insurance coverage is not available, Borrower shall pay to Lender each month a sum equal to one-twelfth of the yearly mortgage insurance premium being paid by Borrower when the insurance coverage lapsed or ceased to be in effect. Lender will accept, use and retain these payments as a loss reserve in lieu of mortgage insurance. Loss reserve payments may no longer be required, at the option of Lender, if mortgage insurance coverage (in the amount and for the period that Lender requires) provided by an insurer approved by Lender again becomes available and is obtained. Borrower shall pay the premiums required to maintain mortgage insurance in effect, or to provide a loss reserve, until the requirement for mortgage insurance ends in accordance with any written agreement between Borrower and Lender or applicable law.

**9. Inspection.** Lender or its agent may make reasonable entries upon and inspections of the Property. Lender shall give Borrower notice at the time of or prior to an inspection specifying reasonable cause for the inspection.

**10. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender.

In the event of a total taking of the Property, the proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the taking, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the taking, divided by (b) the fair market value of the Property immediately before the taking. Any balance shall be paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is less than the amount of the sums secured immediately before the taking, unless Borrower and Lender otherwise agree in writing or unless applicable law otherwise provides, the proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the condemnor offers to make an award or settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the proceeds, at its option, either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of such payments.

**11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment

**SOUTH CAROLINA** - Single Family - Fannie Mae/Freddie Mac Uniform Instrument
Form 3041 9/90
Laser Forms Inc. (800) 446-3555
LIFT #FNMA3041 6/96          **Page 4 of 7**          Initials: _RWL_

MORTGAGE

VOL *2223* PAGE *17*

or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 17. Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

**13. Loan Charges.** If the loan secured by this Security Instrument is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Note.

**14. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any other address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**15. Governing Law; Severability.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**16. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

**17. Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**18. Borrower's Right to Reinstate.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earlier of: (a) 5 days (or such other period as applicable law may specify for reinstatement) before sale of the Property pursuant to any power of sale contained in this Security Instrument; or (b) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees; and (d) takes such action as Lender may reasonably require to assure that the lien of this Security Instrument, Lender's rights in the Property and Borrower's obligation to pay the sums secured by this Security Instrument shall continue unchanged. Upon reinstatement by Borrower, this

**SOUTH CAROLINA** - Single Family - Fannie Mae/Freddie Mac Uniform Instrument
Form **3041** 9/90
Laser Forms Inc. (800) 446-3555
LIFT #FNMA3041 6/96                    Page 5 of 7          Initials: _____

Security Instrument and the obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under paragraph 17.

**19. Sale of Note; Change of Loan Servicer.** The Note or a partial interest in the Note (together with this Security Instrument) may be sold one or more times without prior notice to Borrower. A sale may result in a change in the entity (known as the "Loan Servicer") that collects monthly payments due under the Note and this Security Instrument. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change in accordance with paragraph 14 above and applicable law. The notice will state the name and address of the new Loan Servicer and the address to which payments should be made. The notice will also contain any other information required by applicable law.

**20. Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 20, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 20, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

<u>NON-UNIFORM COVENANTS</u>. Borrower and Lender further covenant and agree as follows:

**21. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under paragraph 17 unless applicable law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 21, including, but not limited to, reasonable attorneys' fees and costs of title evidence, all of which shall be additional sums secured by this Security Instrument.**

**22. Release.** Upon payment of all sums secured by this Security Instrument, this Security Instrument shall become null and void. Lender shall release this Security Instrument without charge to Borrower. Borrower shall pay any recordation costs.

**SOUTH CAROLINA** - Single Family - Fannie Mae/Freddie Mac Uniform Instrument
Form 3041 9/90
Laser Forms Inc. (800) 446-3555
LIFT #FNMA3041 6/96

Initials: RBt

**MORTGAGE**

VOL 2223 PAGE 19

**23. Waivers.** Borrower waives all rights of homestead exemption in the Property.

**24. Future Advances.** The lien of this Security Instrument shall secure the existing indebtedness under the Note and any future advances made under this Security Instrument up to one hundred fifty percent (150%) of the original principal amount of the Note plus interest thereon, attorneys' fees and court costs.

**Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants and agreements of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es)]

☐ Adjustable Rate Rider      ☐ Condominium Rider                  ☐ 1-4 Family Rider
☐ Graduated Payment Rider    ☐ Planned Unit Development Rider    ☐ Biweekly Payment Rider
☐ Balloon Rider              ☐ Rate Improvement Rider           ☐ Second Home Rider
☐ Other(s) [specify]

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

Witnesses:

_____        _____ (Seal)
                                         ROOSEVELT PATTERSON            -Borrower

_____        _____ (Seal)
                                                                        -Borrower

_____        _____ (Seal)
                                                                        -Borrower

_____        _____ (Seal)
                                                                        -Borrower

—————————— [Space Below This Line For Acknowledgment] ——————————

**STATE OF SOUTH CAROLINA,**                                    **County ss:**

Before me personally appeared   the undersigned witness

and made oath that s/he      saw the within named Borrower sign, seal, and as  his    act and deed, deliver the within written Mortgage; and that   the other subscribing witness

witnessed the execution thereof.
Sworn before me this  27TH    day of   MAY, 1999

_____
_____ (Seal)
Notary Public for South Carolina

My Commission expires: 12/18/05

**SOUTH CAROLINA** - Single Family - Fannie Mae/Freddie Mac Uniform Instrument
Form 3041 9/90
Laser Forms Inc. (800) 446-3555
LIFT #FNMA3041 8/96                    Page 7 of 7

6-4-99 at 1325

RECORDED
R.M.C.    AIKEN COUNTY

MISCELLANEOUS
VOL 1036 PAGE 31

EXHIBIT "A"

PROPERTY DESCRIPTION

Roosevelt Patterson

All that certain piece, parcel or lot of land, with all improvements thereon, containing one and one half (1 ½) acres, more or less, situate, lying and being at Dry Branch about nine (9) miles South of the City of Aiken, in Aiken County, South Carolina and bounded and measuring as follows: NORTH by other property of Willie and Annie Bell Hooks, One Hundred Fifty-six (156) feet; EAST by lands of Milledge Moody, but separated there from by a County Road, Three Hundred Seventy (370) feet; SOUTH by lands of Arthur Patterson, One Hundred Fifty-six (156) feet; and WEST by lands of John Morgan, Three Hundred Seventy (370) feet.  Being the lot subdivided from lands conveyed to grantors in Deed Book 157, Page 107, records of Aiken County, South Carolina.

This being the same property conveyed to Roosevelt Patterson by deed of Willie Hooks and Annie Bell Hooks recorded November 4, 1957 and recorded in Title Book 207 at page 255, records of Aiken County, South Carolina.

refered 8-10-00 @ 1120 hs.
RECORDED
Judith W Warner
RMC.  AIKEN COUNTY
by Jennifer Smith D.C.

| Requesting Recording By and<br>When Recorded Mail To: | For Recording Information Only |
|---|---|
| When Recorded Mail To:<br>TD Service Company<br>1820 E. First Street, Suite 300<br>Santa Ana, CA 92705<br>Attn: Irene - Assn Project | |

**Document Attached To Be Recorded:**  Assignment of Mortgage

**Borrower's Name:** Rosevelt Patterson



ASGN

MISCELLANEOUS

VOL 1036 PAGE 30

STATE OF SOUTH CAROLINA    )
                           )                    ASSIGNMENT OF MORTGAGE
COUNTY OF    AIKEN          )

For valuable consideration ___THE MONEY CENTRE, INC.___ sole owner and

holder of the within mortgage dated ___MAY 27, 1999___, from ___ROOSEVELT PATTERSON___

_____ to secure a loan in the amount of ___SIXTY-SIX THOUSAND

THREE HUNDRED SEVENTY-FIVE___ Dollars ($ 66,375.00 ) and record in Book __

2273 Page 12 of the records of the Register of Mesne Conveyances for _____

__AIKEN_____ County, South Carolina, does hereby transfer, assign and set over the same

with the Note which it was given to secure unto *Accredited Home Lenders, Inc,*

*A California Corporation*_____.

WITNESS the signature and Seal of the Said ___THE MONEY CENTRE, INC.___,

by _KAREN GOODALL_, its Asst. Vice President, _C. RODRIGUEZ___, its Officer hereby

duly authorized this _27TH_ day of ___MAY_____, 19_99___.

SIGNED, SEALED AND DELIVERED
IN THE PRESENCE OF:

_____          BY: _____
                                              KAREN GOODALL, AVP

_____          _____
                                              C. RODRIGUEZ, ASST SEC

STATE OF    NORTH CAROLINA

COUNTY OF    MECKLENBURG

Before me personally appeared ___S. BATTEASTE_____, who being duly

sworn says that (s)he saw the above-named ___THE MONEY CENTRE, INC.___,

by _KAREN GOODALL___, its _ASST VICE PRESIDENT_ and _C. RODRIGUEZ__, its

Officer, sign, seal and as the act and deed of the Corporation deliver the foregoing written

instrument, for the uses and purposes therein mentioned, and the (s)he with _SUE ANN

JOHNSON_____witnesses the due exception thereof.

Sworn to before me this _27TH_
day of _MAY_____, 19_99_.

_____          _____
Notary Public
My commission expired:_____

My Commission Expires 6/26/2000

MISCELLANEOUS
VOL *1026* PAGE *256*

RETURN TO: S. A. Wileman
Orion Financial Group, Inc.
2860 Exchange Blvd., Suite 100
Southlake, TX 76092



## ASGN

### Assignment of Mortgage        Send Any Notices To Assignee.

For Good and Valuable Consideration, the receipt and sufficiency of which are hereby acknowledged, the undersigned,

ACCREDITED HOME LENDERS, INC. DBA AXIOM FINANCIAL SERVICES
15030 Avenue of Science, Suite 100, San Diego, CA 92128            (Assignor)
by these presents does convey, grant, bargain, sell, assign, transfer and set over, without recourse, the described mortgage, together with the certain note(s) described therein with all interest, all liens, and any rights due or to become due thereon to:

ASSOCIATES HOME EQUITY SERVICES, INC.
250 E. Carpenter Freeway, Irving, TX 75062            (Assignee)
Said mortgage is recorded in the State of SC, County of Aiken
on 6/4/99, Book 2273 Page 12 Dated: 5/27/99 AMOUNT: $ 66,375.00
Original Mortgagor –: ROOSEVELT PATTERSON
Original Mortgagee–: THE MONEY CENTRE, INC.



AHES DKM

IN WITNESS WHEREOF, the undersigned corporation has caused this instrument to be executed by its proper officer who was duly authorized by a resolution of its board of directors.

Dated: May 3, 2000
ACCREDITED HOME LENDERS, INC. DBA AXIOM FINANCIAL SERVICES

By: _____          Witness: Daniel K. McCarley
W. H. Wileman, Attorney in fact

RECEIVED
JUN 1 9 2000
Orion Financial Group, Inc.
Mortgage Services Div.

Witness: Michelle Mathews

State of Texas
County of Tarrant
Personally appeared before me Michelle Mathews and made oath that he/she saw the within named W. H. Wileman, Attorney in fact of/ for ACCREDITED HOME LENDERS, INC. DBA AXIOM FINANCIAL SERVICES, by sign, seal and as their act and deed deliver the within written instrument and that he/she with Daniel K. McCarley witnessed the due execution thereof. Sworn before me this 5/3/00.

Witness: Michelle Mathews

Notary public, Celeste L. Anderson
My commission expires: March 24, 2001

CELESTE L. ANDERSON
NOTARY PUBLIC
State of Texas
Comm. Exp. 03-24-2001

referred 5-23-00 at 1045 hrs.
RECORDED
R.M.C.    AIKEN COUNTY
by Judith T. Warner
by Lynn Stembridge DC

Prepared by: T. J. Katz
Orion Financial Group, Inc.
2860 Exchange Blvd., Suite 100
Southlake, TX 76092

SC  Aiken

AHES -W/ACCRED/ASO

7512

ASSIGNMENT
RECORDING FEES                    $6.00
PRESENTED & RECORDED:
08-22-2005  09:40 AM
JUDITH WARNER
REGISTER OF MESNE CONVEYANCE
AIKEN COUNTY, SC
By: JOYCE H ERGLE DEPUTY RMC
**BK:RB 4013**
**PG:62-62**

RETURN TO:
S. A. Wileman
Orion Financial Group, Inc.
2860 Exchange Blvd. # 100
Southlake, TX 76092            **ASSIGNMENT OF MORTGAGE**       Send Any Notices To Assignee.
For Valuable Consideration, the undersigned, **ASSOCIATES HOME EQUITY SERVICES, INC. 250 E.
Carpeter Freeway, Irving, TX 75062 (Assignor)** by these presents does assign, and set over, without recourse, to
**CITIFINANCIAL MORTGAGE CO., INC. 1111 Northpoint Drive, Bldg. 4 Ste. 100, Coppell, TX 75019
(Assignee)** the described mortgage, together with certain note(s) described with all interest, all liens, any rights due
or to become due thereon, executed by **ROOSEVELT PATTERSON** to **THE MONEY CENTRE, INC..**    Said
mortgage **Dated: 5/27/1999 is recorded in the State of SC, County of Aiken on 6/4/1999, as Book 2273 Page 12**
**AMOUNT: $ 66,375.00**
IN WITNESS WHEREOF, the undersigned corporation has caused this instrument to be executed by its proper
officer. Executed on: August 8, 2005
ASSOCIATES HOME EQUITY SERVICES, INC.

By:  _____

A. Tucker, Vice President                              PATTERSON AHES MM *03114365*

Witness: Daniel K. McCarley                           Witness: A. Linwood

State of Texas, County of Tarrant
Personally appeared before me A. Linwood and made oath that he/she saw the within named A. Tucker, Vice
President of/ for ASSOCIATES HOME EQUITY SERVICES, INC. , by sign, seal and as their act and deed deliver
the within written instrument and that he/she with Daniel K. McCarley witnessed the due execution thereof. Sworn
before me this 8/8/2005.

Witness: A. Linwood

C. Wallace
NOTARY PUBLIC
STATE OF TEXAS
My Comm. Expires 02-07-2009

Notary public, C. Wallace
My commission expires: February 7, 2009

SC  Aiken                              Jay Anderson-Lynette Troutman
                                       CITIFIP/SETITLE/CITI



**0055**

ASSIGNMENT
RECORDING FEES          $7.00
PRESENTED & RECORDED

08-13-2013 10:43 AM
JUDITH WARNER
REGISTER OF MESNE CONVEYANCE
AIKEN COUNTY, SC
BY: JULIE STUTTS DEPUTY RMC

**BK: RB 4473**
**PG: 1371 - 1372**

RETURN TO:
M. E. Wileman
2860 Exchange Blvd. # 100
Southlake, TX 76092

**ASSIGNMENT OF MORTGAGE**          Send Any Notices To Assignee.

For Valuable Consideration, the undersigned, **CITIMORTGAGE, INC. SUCCESSOR BY REASON OF MERGER TO CITIFINANCIAL MORTGAGE CO, INC.  4050 Regent Blvd, MS N2A-222, Irving, TX 75063** (Assignor) by these presents does assign, and set over, without recourse, to **CHRISTIANA TRUST, A DIVISION OF WILMINGTON SAVINGS FUND SOCIETY, FSB, AS TRUSTEE OF NORMANDY MORTGAGE LOAN TRUST, SERIES 2013-9  1610 E. St. Andrew Place, Suite B, Santa Ana, CA 92705 (Assignee)** the described mortgage with all interest, all liens, any rights due or to become due thereon, executed by **ROOSEVELT PATTERSON to THE MONEY CENTRE, INC..   Said mortgage Dated: 5/27/1999** is recorded in the State of **SC, County of Aiken on 6/4/1999, as Book 2273 Page 12 AMOUNT: $ 66,375.00     Property Address: 131 ODOM STREET, AIKEN, SC 29803**

IN WITNESS WHEREOF, the undersigned corporation/trust has caused this instrument to be executed by its proper officer. Executed on: August 6, 2013

CITIMORTGAGE, INC. SUCCESSOR BY REASON OF MERGER TO CITIFINANCIAL MORTGAGE CO, INC.

By: _____

Melanie A. Arndt, Vice President

PATTERSON   YNS   *4819*

_____
Witness:  T. Davis

_____
Witness: S. Bryan

RETURN TO:
M. E. Wileman
2860 Exchange Blvd. # 100
Southlake, TX 76092

**ASSIGNMENT OF MORTGAGE**          Send Any Notices To Assignee.

State of Texas, County of Tarrant
     On 08/06/2013, before me, the undersigned, personally appeared Melanie A. Arndt, who acknowledged that he/she is Vice President of/for  CITIMORTGAGE, INC. SUCCESSOR BY REASON OF MERGER TO CITIFINANCIAL MORTGAGE CO, INC.  and that he/she executed the foregoing instrument and that such execution was done as the free act and deed of CITIMORTGAGE, INC. SUCCESSOR BY REASON OF MERGER TO CITIFINANCIAL MORTGAGE CO, INC. .



Notary public, Julie Bacon
My commission expires: November 30, 2014

4819•